**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADAM T.,**[1]

        **Plaintiff,**

v.                                            **6:20-cv-00492**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION and ORDER

Plaintiff Adam T. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security denying his application for benefits. Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying his application was not supported by substantial evidence and contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

### I.  PROCEDURAL HISTORY

On December 6, 2016, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning January 1, 2006, due to

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect his privacy.

anxiety disorder, sciatica, and sleep disorder. Administrative Transcript ("T") at 60-61, 66-67. Plaintiff's claims were denied on January 10, 2017. T 78. After a hearing held on February 11, 2019 (T 29-57), ALJ Kenneth Theurer issued an unfavorable decision. T 9-21. In March 2020, the Appeals Council denied Plaintiff's request that it review the ALJ's decision, (T 1–5), so the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 416.1481. Plaintiff commenced this action, Dkt. No. 1, giving this Court jurisdiction over the ALJ's decision under 42 U.S.C. § 405(g).

## II.   FACTS

The Court assumes familiarity with the facts and will set forth only those facts relevant to the Court's decision in the body of the decision below.

## III.   THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. In his decision, the ALJ found Plaintiff last met the insured status requirements on December 31, 2008, and he has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date. T 11. As relevant to Plaintiff's challenge here, the ALJ found Plaintiff suffers from the severe impairments of anxiety and depression. T 11. The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. T 12. The ALJ determined Plaintiff did not have a severe medically determinable impairment prior to his date last insured of December 31, 2008. T 11, 18.[2]

---

[2] Plaintiff has not challenged the ALJ's finding that his alleged physical impairments were not severe impairments; he has not challenged the ALJ's RFC assessment that he can perform a full range of work at all exertional levels; nor has he challenged the ALJ's finding that he did not have a severe medically determinable mental impairment prior to his date last insured. *See generally* Pl.'s Br. 12–20.

2

The ALJ assessed a residual functional capacity ("RFC") that limited Plaintiff, in summary, to performing simple tasks; interacting with supervisors and coworkers to the extent necessary to perform simple tasks; only occasional, brief interaction with the public; reasonable levels of simple, work-related stress; decisions related to simple work; and usual work place changes and interactions associated with simple work. T 14.[3] Relying on the testimony of a vocational expert, the ALJ found that an individual with Plaintiff's vocational profile and RFC could perform jobs that existed in significant numbers in the national economy, such as laundry worker, machine feeder, and mail clerk. T 20-21. Accordingly, the ALJ determined that Plaintiff was not disabled. T 21.

## IV.   ISSUES ON APPEAL

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because he essentially rejected the medical source opinions of psychological consultative examiner Corey Anne Grassl, Pys.D. and of treating physician's assistant Rebecca Friemann, PA-C, that the ALJ failed to evaluate these opinions in accordance with the proper legal standards, and that "with the rejection of all medical opinions, the ALJ

---

[3]The ALJ found that Plaintiff:

> retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for simple task [sic], regularly attend to a routine and maintain a schedule. [Plaintiff] can relate to and interact with coworkers and supervisors to the extent necessary to carry our simple tasks – i.e. he can ask for help when needed, handle conflicts with others, state his own point of view, initiate or sustain a conversation and understand and respond to physical, verbal, and emotional social cues. He should avoid work requiring more complex interaction or joint efforts with coworkers to achieve goals. [Plaintiff] should no more than occasional brief interaction with the public. He can handle reasonable levels of simple work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

T 14.

effectively substituted his judgment for that of the medical sources, which is impermissible and requires remand." Pl. Brief, at 12. Defendant opposes each of these arguments. *See generally* Def. Brief.

## V.     STANDARD OF REVIEW

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record.'" *Hill*, 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020)(quoting *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Grant v. Colvin*, No. 14-CV-7761, 2016 WL 1092685, at *3 (S.D.N.Y. Mar. 21, 2016)("The Second Circuit has defined substantial evidence as 'more than a mere scintilla, and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'")(quoting *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015))(citation and internal quotation marks omitted). Where the record supports disparate findings and

4

provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

## VI. DISCUSSION

### a. Dr. Grassl

Plaintiff argues that the ALJ "first erred in rejecting Dr. Grassl's opinion." Pl. Br. at 13. As the ALJ stated:

> Consultative psychologist Corey Anne Grassl, PsyD examined the claimant on November 26, 2018. The claimant told Dr. Grassl that he last worked in March 2009 as a professional poker player, held the job for five years and was laid off (Exhibit 9F, page 1). She diagnosed major depressive disorder, recurrent episodes, moderate and generalized anxiety disorder (Exhibit 9F, page 3). Dr. Grassl stated that there was no evidence of limitation in his ability to understand, remember, and apply simple and complex directions and instructions; understand, remember, use reason and judgment to make work-related decisions, and interact adequately with supervisors, co-workers, and the public. Dr. Grassl determined that the claimant is markedly limited in his ability to sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behaviors, and maintain well-being. She found no evidence of limitation in his ability to maintain personal hygiene and appropriate attire, or be aware of normal hazards and take appropriate precautions (Exhibit 9F, page 3).

T 18.

The ALJ indicated that Dr. Grassl "also completed a medical source statement check list in which she said that the claimant has no limitations in his ability to understand, remember and carry out instructions but that he does have marked limitations in his ability to interact appropriately with the public, with supervisors and co-workers and marked limitations in his ability to respond appropriately to usual work situations and changes in a

5

routine work setting because of his severe insomnia." *Id.*  The ALJ determined that "[a]lthough Dr. Grassl is a program knowledgeable expert who examined the claimant, her opinion is given little weight because she completely contradicts herself between the medical source statement she provided on page 3 of her consultative report and the checklist she completed on pages 5 and 6 of the report. Her findings are not supported by the objective evidence of the mental status examination or other treating records." *Id.* at 18-19.  Plaintiff argues that "the inconsistency is easily explained" because in her report Dr. Grassl opined that Plaintiff was markedly limited in his ability to sustain concentration and perform at a consistent pace, sustain an ordinary routine and attendance, and regulate emotions, and then stated "[t]he results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." Pl. Brief at 13-14 (quoting T 275).  Whereas, when Dr. Grassl "completed the check-box form, she clearly stated the limitations were based on Plaintiff's self-report." *Id.* at 14 (citing T 278).  From this Plaintiff argues,"[i]t is obvious that the difference between the opinions is because one is based on Plaintiff's own reports of limitations. Therefore, the ALJ cannot reject the opinion clearly based on the examination for being inconsistent." *Id.*  This argument is insufficient to warrant remand.

The inconsistency alone is a sufficient reason to reduce the weight afforded to the opinion as a whole. *See* 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  The ALJ did not need to reconcile the two opinions, or surmise that the reason for the inconsistency was that the medical source check-off statement was based on

6

Plaintiff's subjective complaints.  Even if the ALJ reached this conclusion it would not have necessarily changed the conclusion because an ALJ is free to discount even a treating source opinion when it relies too heavily on the patient's subjective complaints. *Cf. Ratliff v. Barnhart*, 92 F. App'x 838, 840 (2d Cir. 2004)("Given that this opinion was based solely on Ratliff's representations rather than Dr. Adelson's first-hand observations, and in any event provides no evidence as to Ratliff's condition in 1991, the ALJ was correct in not giving Adelson's opinion controlling weight.")(summary order); *see Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006)(a consultative examiner's opinion is entitled to "no special deference.").

      Further, the ALJ found Dr. Grassl's opinion was "not supported by the objective evidence of the mental status examination or other treating records." T 19.  Dr. Grassl's mental status findings revealed no limitations in Plaintiff's "ability to understand, remember, and apply simple and complex directions and instructions; understand, remember, use reason and judgment to make work-related decisions, and interact adequately with supervisors, co-workers, and the public." T 19; *see* T 274.  Although Dr. Grassl stated that the results of her examination appeared consistent with "psychiatric problems" which may interfere with Plaintiff's "ability to function on a daily basis," T 275, she did not say that her medical source statement (or her examination) did not consider Plaintiff's subjective reporting.  Indeed, when documenting Plaintiff "Current Functioning," Dr. Grassl's report expressly considered what Plaintiff reported to her. T 273.  So Plaintiff's argument does not necessarily contradict the ALJ's finding that Dr. Grassl's opinion was internally inconsistent.

Plaintiff also argues that the ALJ's decision cannot stand because the "ALJ did not provide citations to any evidence" to support his finding that Dr. Grassl's opinion was inconsistent with the record. Pl.'s Br. 14.  This argument is without merit.  First, the ALJ found Dr. Grassl's opinion was inconsistent with "the objective evidence of the mental status examination," which refers to Dr. Grassl's mental status examination. T 19. Second, the ALJ found that Dr. Grassl's opinion was inconsistent with "other treating records." T 19.  The ALJ's decision as a whole fairly discussed and considered the objective evidence that was reasonably inconsistent with Dr. Grassl's opinion. *See Trombley v. Colvin*, No. 8:15-CV-00567 (TWD), 2016 WL 5394723, at \*17 (N.D.N.Y. Sept. 27, 2016) (noting "the record as a whole" supported the ALJ's evaluation of impairments). This included the ALJ's discussion of mental status examinations, findings, and assessments throughout Plaintiff's treatment records, including those from Dr. Grassl, *see* T 12,[4] 13,[5] (citing Exhibit 9F)), at Mental Health Connections, *see* T 12,[6] 13,[7] from Nurse

---

[4]("Dr. Grassl found the claimant's recent and remote memory skills to be intact (Exhibit 9F, page 2). She indicated that the claimant's impairment did not affect his ability to understand, remember and carry out instructions (Exhibit 9F, page 5).")

[5]("The claimant told Dr. Grassl that he is close to his family and socializes frequently. Dr. Grassl indicated that the claimant has marked limitations in his ability to interact appropriately with the public, with supervisors and coworkers because his self-reported severe insomnia is detrimental to his ability to interact with others (Exhibit 9F, page 6).")

[6]("In understanding, remembering, or applying information, the claimant has a moderate limitation. In the therapy notes from 2010, the claimant's alleged that his memory was good and that he would gamble where he has better knowledge and better odds, such as on basketball because it is not affected by as many players or the weather (Exhibit 10F, page 26).")

[7]("With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. During therapy sessions at Mental Health Connections in 2010, the claimant indicated that he has obsessive compulsive disorder and he was able to stay focused when he was gambling (Exhibit 10F, page 25).")

Practitioner Patricia Roach, T 12–13,[8] 14,[9] 14,[10] from Bahram Omidian, MD, T 16,[11] and from Vidya Patil, MD. T 16.[12]  The ALJ was not required to restate his  discussion of these assessments in the paragraph assigning little weight to Dr. Grassl's opinion. *Cf. Trombly*, 2016 WL 5394723, at *17 (noting "no purpose would be served" by requiring ALJ to "restate" his analysis) (internal citation omitted).  While some of the objective evidence referenced by ALJ in his opinion could be deemed consistent with Dr. Grassl's opinion,

---

[8]("Patricia Roach, NPP provides medical management to the claimant at Community Health Behavioral Services and indicated in each of her treatment session notes that the claimant's recent and remote memory skills are intact and judgment and insight are fair (Exhibit 17F). The claimant has struggled with overcoming his addiction to Xanax and spent over a year tapering with his last dose on June 23, 2018 (Exhibit l 7F, page 90).  During his intake assessment at Community Health Behavioral Services in February 2017, he reported that he does not see his history of gambling, spending and winning excessive amounts of money as problematic or impacting his functioning and he goes occasionally to local casinos. He denied any impulsivity and risk taking behaviors (Exhibit 7F, page 1 ).")

[9]("In October 2018, Patricia Roach, NPP reported that the claimant said he is doing well and his mood is stable. He tapered the use of Xanax for over a year with the last does on June 23, 2018. He indicated that clonidine seems to be losing its strength and he continues with difficulty sleeping and requested a change in another sleep agent (Exhibit 17F, pages 90-91 ).")

[10]("The claimant reported to Patricia Roach, NPP that he is doing well and his mood is stable and he continues to look for ways to alleviate his insomnia (Exhibit 17F, pages 90-91 ).")

[11]("The earliest treatment records that the claimant submitted for review are from Mental Health Connections dated September 1, 2010 when the claimant was given a psychiatric evaluation (Exhibit 10F, pages 7 and 8). Bahram Omidian, MD reported that the claimant did not seem to be overly depressed, anxious, or agitated. He complained of some mood changes, however, denied history of typical ups and downs or manic depressive symptoms. On direct question, he did not have any suicidal ideas, plan, or preoccupation nor did he have any preoccupation about harming or hurting self or others. He denied any hallucination and did not seem to be delusional. He had a tendency for repetition and detailed portioning. Dr. Omidian stated that the claimant 'definitely has obsession and compulsion though does not have typical checking and unchecking or germ phobia' (Exhibit 10F, page 7). The claimant's intellectual [sic] was stated to be above average, and his expressed insight and judgment seemed to be fairly good. Dr. Omidian diagnosed depressive disorder, not otherwise specified, obsessive-compulsive disorder, rule out bipolar disorder, not otherwise specified and chronic pain syndrome (Exhibit l0F, page 8).")

[12]("On February 15, 2011, Vidya Patil, MD reported that the claimant has an addiction to Xanax and they are not prescribing and he was informed about that. He will come to Mental Health Connections for therapy only. He minimized all of his symptoms except for insomnia and anxiety, for which he needs Xanax and that is what he talked about. He also said that he has a gambling addiction and that he is a professional poker player for the last six years, but does not want to address that. He said he would go to Dr. Lowenstein to get his Xanax, Effexor and Wellbutrin. Dr. Patil encouraged him to go find work, put out his application and go to job fairs so he will have a regular schedule (Exhibit l0F, page 3).")

and while Plaintiff cites to other places in the record that could serve the same purpose, the standard of review holds that "once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)(internal quotation marks and citation omitted).  As the defendant argues,

> it does not matter whether some evidence (even substantial evidence) might support Dr. Grassl's opinion, so long as the ALJ's reasons for discounting it are supported by substantial evidence. [*Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)].  Since substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," [*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)] (cleaned up), the ALJ's identification of inconsistent mental status examination findings satisfies that "very deferential standard of review," *see Cudworth ex rel. K.D. v. Colvin*, No. 8:13-cv-361 (GLS/ESH), 2014 WL 4827946, at *4 (N.D.N.Y. Sept. 29, 2014).  At best, Plaintiff has identified the "not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Here, the ALJ supportably resolved the evidentiary conflict by finding the largely normal mental status findings weighed in favor of discounting Dr. Grassl's opinion. (T 12–13, 18–19.)  Simply because the ALJ's resolution of conflicting evidence did not favor Plaintiff is not reason for remand.

Def. Brief at 13.  Plaintiff's arguments directed to the ALJ's assessment of Dr. Grassl's opinion are insufficient to warrant remand.

### b. Physician's Assistant Friemann

Plaintiff also argues that the ALJ erred by failing to weigh Physician's Assistant ("PA") Friemann's opinion appropriately.  Pl. Brief at 15.  He contends that it was error for the ALJ to reject PA Friemann's opinion on the grounds that she is not an acceptable medical source, and that the ALJ failed to "provide an explanation in his decision for the weight given to the opinion." *Id.*

In addressing PA Friemann's opinion, the ALJ wrote:

10

>The claimant's primary care provider, Rebecca Friemann, PA-C completed a medical source statement dated February 15, 2017, and stated that the claimant can walk three to four blocks depending on his symptoms, sit, stand/walk for about four hours total during an eight-hour workday, and that he would need a job that permits shifting positions at will from sitting, standing or walking (Exhibit 6F, page 1). PA Friemann indicated that the claimant would need one to two unscheduled breaks every two or three hours for ten to fifteen minutes at a time. The claimant can occasionally lift and can carry up to ten pounds and rarely lift and carry twenty pounds. She stated the claimant can rarely twist, stoop/bend, crouch/squat, climb ladders or climb stairs, but that he can frequently grasp, turn and twist objects with his hands, do fine manipulation with his fingers and occasionally reach, including overhead with his bilateral upper extremities (Exhibit 6F, page 2). She opined that the claimant is seriously limited but not precluded in his ability to carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, respond appropriately to changes in a routine work setting and deal with normal work stress (Exhibit 6F, page 3). PA Friemann estimated that the claimant would likely be off-task more than twenty percent of an eight-hour workday and be absent more than four days per month (Exhibit 6F, pages 3 and 4).
>
>Little weight is given to PA Friemann's opinion because she is not considered an acceptable medical source and her findings regarding the claimant's physical limitations are inconsistent with the claimant's own testimony that he has only minor sciatica. The claimant had previously reported that sitting and playing poker for ten hours at a time was not unusual, but PA Friemann says that he cannot sit for more than four hours at a time and needs to take unscheduled breaks. Her findings related to the claimant's mental impairments are totally inconsistent because every time the claimant was treated by PA Friemann, he denied anxiety, depression and hallucinations and his mental status examination was within normal limits with rare exceptions when he was moderately anxious or unkempt (Exhibit 15F, pages 2, 3, and 5-12). PA Friemann first saw the claimant in January 2017 and told her that he walks a mile a day three to four times a week. He also told her that it was going to take some time for him to be able to see a psychiatrist at CHBS and needed to obtain prescriptions for his Xanax (Exhibit 15F, pages 9-12).

T 19.

"While an ALJ may consider evidence from a PA, such a source is not an 'acceptable medical source' and therefore cannot constitute a 'treating source.'" *Evans v.*

*Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016)(citing 20 C.F.R. §§ 404.1502, 404.1513(d)(1)). The Second Circuit has made clear that an ALJ is not required to defer to such a source "under the treating source rule, but merely to consider [a PA's] opinion as with any other probative evidence." *Id.* at 38-39 (citing *Kohler v. Astrue*, 546 F.3d 260, 268–69 (2d Cir. 2008)); *see Lydia L. v. Saul*, No. 3:19-CV-1084 (DJS), 2020 WL 7629450, at *4 (N.D.N.Y. Dec. 22, 2020)(A PA's opinion "would not be entitled to controlling weight because a physician's assistant is considered an 'other source' and not an 'acceptable medical source.'")(citations omitted). "Nonetheless, an ALJ must weigh that opinion according to a number of factors, including the length, nature, and extent of the treatment relationship and the frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors." *Evans*, 649 F. App'x at 39 (citing 20 C.F.R. § 404.1527(c)); *see* 20 C.F.R. § 404.1527(f)(1).[13] "While an ALJ is entitled to afford little or no weight to a physician's assistant's opinion, he 'generally should explain the weight given' to that opinion 'or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case.'" *Lydia L.*, 2020 WL 7629450, at *5 (quoting SSR 06-03p, 2006 WL 2329939, at

---

[13]("Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case.")

*6,[14] and citing 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2)).

Here, the ALJ did not consider the consistency of PA Friemann's opinion regarding Plaintiff's mental impairments (*see* T 250 "poorly controlled anxiety and depression") with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). Rather, in this regard, the ALJ compares only the consistency of the medical source statement opinion with PA Friemann's treatment notes. The record reflects that Plaintiff sought treatment from numerous providers for his depression and anxiety, and that he received medication for these conditions including Xanax (which Plaintiff was apparently addicted to), and Paxil. PA Friemann references in her treatment notes that Plaintiff was on these medications, *see* T 371, 369, 367, 365, which perhaps provides a reason why Plaintiff denied anxiety and depression when he met with PA Friemann and why his mental status examinations generally were within normal limits. In determining the weight to afford PA Friemann's

---

[14]Defendant argues that SSR 06-03p is inapplicable in this case because it was rescinded on March 27, 2017 and because the ALJ's decision was issued on February 20, 2019. *See* Def. Brief, p. 13, n. 5. However, Courts in this District have found SSR 06-03p relevant to Social Security claims instituted before it was rescinded even where the ALJ's decision was issued after March 27, 2017. *See Lydia L.,* 2020 WL 7629450, at *1 (Plaintiff applied for disability insurance benefits and supplemental security income on October 25, 2016, on November 7, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.); *see also Aaron T. v. Saul*, No. 1:18-CV-00298 (MAD/TWD), 2019 WL 5149964, at *4 n. 6 (N.D.N.Y. July 16, 2019)("SSR 06-03p was rescinded on March 27, 2017, because it was inconsistent with newly promulgated regulations related to the opinions and other evidence from sources who are not acceptable medical sources. . . . However, those newly promulgated regulations apply to claims filed on or after March 27, 2017. Therefore, SSR 06-03p remains relevant to Plaintiff's claim because it was filed before March 27, 2017.")(citation omitted), *report and recommendation adopted*, No. 118CV298MADTWD, 2019 WL 3543004 (N.D.N.Y. Aug. 5, 2019). Moreover, at least one Court has found that the provisions of SSR 06-03p were incorporated in 20 C.F.R. § 416.927(f), which is the regulation the defendant contends governs consideration of opinions of non-acceptable medical sources. *See Kuchenmeister v. Berryhill*, No. 16 CIV. 7975 (HBP), 2018 WL 526547, at *19, n. 17 (S.D.N.Y. Jan. 19, 2018)("SSR 06-03p was rescinded on March 27, 2017; however, the provisions were incorporated in 20 C.F.R. § 416.927(f), which will govern consideration of opinions of non-acceptable medical sources in claims filed after March 27, 2017."); Def. Brief. at 13 ("The ALJ was therefore required only to 'consider' the opinion and 'generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.' 20 C.F.R. § 404.1527(f)(1), (2).").

opinion about Plaintiff's mental state, the ALJ should have assessed the consistency of PA Freeman's opinion with records showing why and when Plaintiff was prescribed these medications. *See* 20 C.F.R. § 404.1527(c)(3)("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. . . . We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."). Furthermore, the regulations provide that "[w]hen we consider how much weight to give to a medical opinion, we will also consider any factors . . . of which we are aware [] which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(6). This includes "the extent to which a medical source is familiar with the other information in your case record." *Id*. PA Friemann references that Plaintiff was treating with or seeking treatment from other providers for his anxiety and depression. *See* T 371, 369, 367, 365. The ALJ should have analyzed whether this information known to PA Friemann influenced her opinion in her medical source statement.

In this case, the vocational expert testified that if a person is only able to "frequently" maintain attention and concentration (defined as up to two-third of the workday resulting in the person being off task and unproductive one-third of the work day), or if the person is only able to "frequently" attend to a routine and maintain a schedule (defined as one unscheduled absence per month on average), all work would be precluded. T 56. PA Friemann's opinion appears to assess that Plaintiff was limited beyond these amounts due to his poorly controlled anxiety and depression. *See* T 250-

14

51. Thus, if PA Friemann's opinion was afforded more weight, there is also a reasonable probability that opinion would change the outcome of the ALJ's decision.

For the reasons discussed above, the Court will "remand for the ALJ to reevaluate the weight owed PA [Friemann]'s opinion in light of the factors set forth in 20 C.F.R. § 404.1527(c)." *Evans*, 649 Fed. App'x. at 39.

### c. ALJ Substituted His Own Opinion for the RFC

Because the Court is remanding the case which could change the ALJ's RFC determination, the Court does not address whether the ALJ substituted his own medical opinions to formulate the RFC.

### VII. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 2, 2021

Thomas J. McAvoy
Senior, U.S. District Judge

15